UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| L&B TRUCK SERVICES, INC. | : | |
| and BRS INC., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | File No. 1:09-CV-74 |
| | : | |
| DAIMLER TRUCKS NORTH | : | |
| AMERICA LLC and STERLING | : | |
| TRUCK CORPORATION, | : | |
| | : | |
| Defendants. | : | |
| | : | |

<u>RULING ON MOTION TO DISMISS FIRST & THIRD CAUSES OF ACTION</u>
(Paper 14)

I.  <u>Introduction</u>

Defendants Daimler Trucks North America, LLC (Daimler) and Sterling Truck Corporation (Sterling) (collectively, Defendants) move to dismiss the first and third causes of action in Plaintiffs' L&B Truck Services, Inc. (L&B) and BRS Inc. (BRS) (collectively, Plaintiffs) complaint. (Paper 14.) The claims arise from the alleged termination of L&B's Sterling franchise and seek redress for violation of the Vermont Motor Vehicle Manufacturers, Distributors and Dealers Franchising Practices Act and for breach of the implied covenant of good faith and fair dealing. Plaintiffs oppose the motion. (Paper 19.) For the below reasons, the motion is granted in part and denied in part.

1

II. Background[1]

On May 1, 2008, L&B, a Vermont corporation, purchased assets of Bazin's L&B for over $6 million dollars. Certain assets were then transferred to BRS. On April 21, 2008, L&B entered agreements with each of the Daimler Brands -- Sterling, Western Star, and Freightliner. Sterling is a commercial truck manufacturer and subsidiary of Daimler. The Sterling Sales and Service Agreement (SSA) granted L&B the non-exclusive right to purchase and deal certain Sterling products. Prior to entering the agreements, L&B engaged in extensive discussions and meetings with both Daimler and Sterling representatives. Plaintiffs' plan to add 12,000 square feet to their existing Massachusetts facility -- at a cost of $700,000 -- was known to the representatives before April 2008, and construction began that September.

On October 14, 2008, Daimler advised L&B it was discontinuing the production of Sterling trucks and the last day to order new Sterling trucks would be January 15, 2009. Plaintiffs allege Daimler and Sterling knew of the planned discontinuance of Sterling trucks before the May purchase and the September construction. Daimler offered L&B the option to enter into a Transition Letter Agreement and a new Service Dealer Agreement. L&B refused to sign the new agreements and thereafter initiated suit in this Court on March 24, 2009.

---

[1] The background facts are gleaned from Plaintiffs' complaint (Paper 1).

III.  Discussion

   A.  Standard of Review

A motion to dismiss tests the legal rather than the factual sufficiency of a complaint. See, e.g., Sims v. Ortiz, 230 F.3d 14, 20 (2d Cir. 2000). Accordingly, the Court accepts all well-pleaded facts as true and considers those facts in the light most favorable to the plaintiff, see Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007), drawing all reasonable inferences in favor of the plaintiff. Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). Conclusory statements are not sufficient factual allegations. E&L Consulting, Ltd. v. Doman Indus. Ltd., 472 F.3d 23, 28 (2d Cir. 2006) (internal citation omitted). The standard governing a complaint's legal sufficiency is one of "plausibility." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-60 (2007). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' Once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. 544).

   B.  Vermont Motor Vehicle Manufacturers,
       Distributors & Dealers Franchising Practices Act

Plaintiffs allege Defendants violated the Vermont Motor Vehicle Manufacturers, Distributors & Dealers Franchising Practices Act (MVFPA or the Act), Vt. Stat. Ann.

tit. 9, §§ 4083-4100.[2]  The MVFPA is designed to promote the public interest and welfare by, inter alia, regulating the motor vehicle franshisor/franchisee relationship "to prevent frauds, impositions and other abuses upon [Vermont] citizens and to protect and preserve the investments and properties" of Vermonters.  Id. at § 4084.  The amended Act adds:

> there continues to exist an inequality of bargaining power between []
> franchisors and [] franchisees.  This inequality of bargaining power
> enables [] franchisors to compel [] franchisees to execute franchises and
> related agreements that contain terms and conditions that would not
> routinely be agreed to by the [] franchisees if this inequality did not exist. .
> . .  It is the legislature's intent to have this chapter liberally construed in
> order to achieve its purpose.

2009 Vt. Acts & Resolves Act. No. 57, § 4084(b).

The MVFPA defines "franchise" as the agreement or contract between a new motor vehicle manufacturer and a new motor vehicle dealer.  Vt. Stat. Ann. tit. 9, § 4085(4).  The amended Act clarifies that "franchise" includes all agreements and contracts between the parties relating to the franchise, "including agreements pursuant to which the dealer . . . performs warranty and other service on the manufacturer's products."  2009 Vt. Acts & Resolves Act. No. 57, § 4085(6).  Here, the "franchise" is the Sterling SSA signed by L&B and Sterling.  (Paper 1 (Compl.) at 8, ¶ 39.)  Both Daimler

---

[2] The MVFPA was amended effective July 1, 2009 and the amended version applies to "existing franchise agreements and franchise agreements entered into on or after the effective date" of the amended Act.  2009 Vt. Acts & Resolves Act. No. 57, § 4100.  The complaint -- and all briefing except Defendants' reply dated July 6, 2009 -- was filed prior to amendment of the Act.  The Court will cite to the codified version of the Act and note any differences.  The Court's conclusions are the same under either version.

4

and Sterling are manufacturers because they manufacture or assemble new motor vehicles. Vt. Stat. Ann. tit. 9, § 4085(6); Compl. at 3, ¶¶ 10-11. L&B is a new motor vehicle dealer because it is engaged in the business of selling new motor vehicles and "holds, or held at the time a cause of action [] accrued, a valid sales and service agreement, franchise or contract, granted by the manufacturer [] for the retail sale" of manufacturer's new vehicles.[3]  Vt. Stat. Ann. tit. 9, § 4085(9); Compl. at 5-6, ¶ 20.

Specifically, Plaintiffs allege Defendants violated the Act by failing to comply with section 4089(a) which prohibits a manufacturer from terminating a franchise except in certain circumstances:

> Notwithstanding the terms, provisions or conditions of any franchise . . . no manufacturer shall cancel, terminate or fail to renew any franchise with a licensed new motor vehicle dealer unless the manufacturer has:
> (1) satisfied the notice requirement of section 4090 []; and
> (2) has good cause for cancellation, termination or nonrenewal; and
> (3) has acted in good faith as defined in this chapter.

---

[3] The complaint does not contain allegations sufficient for the Court to find BRS is or was a new motor vehicle dealer. Plaintiffs allege "certain assets L&B acquired [] were transferred and assigned to BRS." (Compl. at 6, ¶ 21.) The complaint contains no allegations BRS is or was engaged in the business of selling new motor vehicles or that it ever held an SSA, franchise, or contract. Compl.; see also Paper 14-3 at 23 (L&B and Sterling are only parties to Sterling SSA). In light of the Court's holding, however, BRS' status is irrelevant.

Vt. Stat. Ann. tit. 9, § 4089(a).[4]  Defendants move to dismiss the count, arguing L&B's Sterling SSA has not been terminated.  (Papers 14 at 1; 25 at 2.)

The central issue is whether Sterling terminated the SSA.  Plaintiffs argue Defendants constructively terminated the SSA because discontinuing the Sterling truck line frustrates the predominate purpose of L&B's Sterling franchise, i.e., selling Sterling trucks.  (Paper 19 at 6.)  Defendants argue L&B has no claim under the MVFPA for constructive termination because the franchise agreement has not been terminated and the dealership continues in business.  (Paper 25 at 3.)

Under the MVFPA, a franchise is the agreement between the parties, here, the Sterling SSA.  (Compl. at 8, ¶ 39.)  The amended Act clarifies that a franchise may include an agreement to perform service on the manufacturer's products.  2009 Vt. Acts & Resolves Act. No. 57, § 4085(6).  Sterling did not terminate, cancel, or fail to renew the SSA as it pertains to L&B's provision of parts and service to owners and purchasers of Sterling products.  See Paper 14-3 at 16, 21, 34-37.[5]  Though Sterling discontinued

---

[4]     The amended Act adds a fourth requirement that the newly created transportation board find, after a hearing, the manufacturer acted in good faith and good cause exists for the cancellation, termination, or failure to renew.  2009 Vt. Acts & Resolves Act. No. 57, § 4089(a)(4).

[5]     Generally, when considering a Rule 12(b)(6) motion to dismiss, a district court may look only to the allegations in the complaint.  If "matters outside the pleading are presented to and not excluded by the court," the court should treat the motion as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).  Documents attached to the complaint or incorporated by reference, however, are deemed part of the complaint.  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  The Court considers the SSA though Plaintiffs did not attach or incorporate it by reference because the SSA is integral to the complaint and no dispute exists regarding the authenticity or accuracy

manufacturing Sterling trucks, as it had reserved the right to do in the SSA, L&B can continue to sell parts and provide service for Sterling trucks and the SSA remains in effect with regard to everything but selling new Sterling trucks.  See Central GMC, Inc. v. Gen. Motors Corp., 946 F.2d 327, 331-32 (4th Cir. 1991) (reversing judgment for franchisee because franchisor's discontinuation of truck line was not cancellation of franchise).  Because the termination provision of the MVFPA applies when a franchise has been terminated, cancelled, or not renewed and L&B's entire franchise agreement has not been terminated, cancelled, or not renewed, Plaintiffs have not stated a claim for which relief can be granted under section 4089 of the MVFPA.

Plaintiffs argue Defendants constructively terminated L&B's Sterling franchise. (Paper 19 at 6.)  Plaintiffs contend a constructive termination of a franchise occurs when the franchisor takes actions that are not expressly a termination of the agreement, but have that effect because those actions have sufficient adverse effect upon the franchisee. (Paper 19 at 6.)  Plaintiffs, however, have made no allegations that L&B's dealership cannot survive or that the discontinuation of the Sterling line will have an adverse effect.  L&B may continue providing Sterling parts and service under the SSA. (Paper 14-3 at 3.)  Further, L&B's franchises with other Daimler brands Freightliner and

---

of the document.  Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006).  The Court may consider correspondence among the parties as well because "documents plaintiffs had either in their possession or had knowledge of and upon which they relied in bringing suit" may be considered in assessing a motion to dismiss.  Goldstein v. Pataki, 516 F.3d 50, 53 (2d Cir. 2008) (internal citations and quotations omitted).  Plaintiffs reference such correspondence in the complaint.  See, e.g., Compl. at 6, ¶ 25.

Western Star continue in effect. (Compl. at 8, ¶¶ 12, 39.) Even if a claim for constructive termination were cognizable under the MVFPA, the Court finds Plaintiffs have not adequately pled such a termination.[6]

    C.    <u>Implied Covenant of Good Faith and Fair Dealing</u>

In Vermont, a covenant of good faith and fair dealing is implied in every contract. <u>R&G Props., Inc. v. Column Fin., Inc.</u>, 968 A.2d 286, 300 (Vt. 2008). The Vermont Supreme Court defines the implied covenant of good faith and fair dealing broadly:

> Each party to a contract makes the implied promise that each will not do anything to undermine or destroy the other's right to receive the benefits of the agreement. The purpose of the implied covenant of good faith and fair dealing is to ensure that parties act with faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.

---

[6] Even were the Court to indulge Plaintiffs and accept their theory of constructive termination, a Florida agency, adjudicating claims for discontinuation of Sterling trucks, determined "as a matter of law, [Sterling's] announced decision to stop manufacturing trucks is not a 'discontinuation of, cancellation of, failure to renew, modification of, or replacement' of a franchise agreement" under the Florida version of the MVFPA. Palmetto Ford Truck Sales, Inc., Case Nos. 09-0861, 09-0862, 09-0863, Final Order No. HSMV-09-516-FOF-DMV, Attach. at 18 (Fla. Dep't of Highway Safety & Motor Vehicles Aug. 11, 2009). The Court would be inclined to agree because the purpose of the Florida and Vermont statutes is similar. <u>Compare</u> <u>id.</u> at 15-16 (stating the purpose of the Florida statute is to redress economic imbalance and equalize the relationship between franshisors and franchisees), <u>with</u> 2009 Vt. Acts & Resolves Act. No. 57, § 4084(b) (noting the "inequality of bargaining power between [] franchisors and [] franchisees . . .enabl[ing] franchisors to compel . . . franchises" that might not otherwise be agreed to). Though the Act is to be liberally construed to achieve its purpose, 2009 Vt. Acts & Resolves Act. No. 57, § 4084(b), the Court finds the facts of this case do not implicate the Act's purpose.

Southface Condo. Owners Ass'n v. Southface Condo. Ass'n, 733 A.2d 55, 58 (Vt. 1999) (internal citations and quotations omitted). Thus, the covenant is an "implied promise that protects against conduct which violates community standards of decency, fairness, or reasonableness." Harsh Props., Inc. v. Nicholas, 932 A.2d 1045, 1050 (Vt. 2007). Good faith is ordinarily a question of fact. R&G Props., 968 A.2d at 301 (internal citation omitted).

Plaintiffs allege Defendants "breached their obligation to refrain from any act that would injure the rights of the plaintiffs to receive the benefits of L&B's agreements with each of the Daimler Brands." (Compl. at 12, ¶ 61.) By discontinuing the Sterling line of trucks, Plaintiffs allege Defendants destroyed their right to receive the benefit of their bargains and acted in a manner inconsistent with Plaintiffs' justified expectations because the primary aim of the bargain was to sell trucks. Id. Further, Plaintiffs allege Defendants knew of the planned discontinuance but failed to inform L&B prior to its purchase of the business and construction of a facility addition. Because whether Defendants acted in good faith or violated community standards of decency, fairness, or reasonableness are questions of fact, they cannot be resolved on a motion to dismiss testing the legal sufficiency of the complaint. Under Vermont law, Plaintiffs have stated a plausible claim for breach of the implied covenant of good faith and fair dealing.

9

IV.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss the first and third causes of action (Paper 14) is GRANTED in part and DENIED in part. Plaintiffs' first cause of action for violation of the MVFPA is dismissed.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 26th day of October, 2009.


/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge